# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**NYDIA REYES COLLAZO,**

    **Plaintiff,**

**v.**                         **Case No.  8:18-cv-2508-T-30AEP**

**NPAS, INC.,**

    **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant NPAS, Inc.'s Motion for Summary Judgment (Dkt. 46) and Plaintiff's Response in Opposition (Dkt. 57). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted because the record is undisputed that Plaintiff's account was not in default during the relevant times.

## PROCEDURAL BACKGROUND

This is an action for unlawful debt collection practices under the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). Defendant NPAS, Inc. initially moved to dismiss the complaint, arguing that it did not act as a debt collector because Plaintiff Nydia Reyes Collazo's account was not in default at the time NPAS sent her the subject billing statements. The FDCPA imposes liability only on a "debt collector," and that term expressly excludes any person seeking to collect "a debt

which was not in default at the time it was obtained by such person." 15 U.S.C. §§ 1692k, 1692a(6)(F)(iii).

NPAS's motion relied on facts outside the four corners of the complaint. For example, NPAS attached a document Collazo executed as a condition to being treated at Largo Medical Center titled Largo's Conditions of Admission and Consent for Outpatient Care (the "Condition of Admission"). NPAS relied on this document to establish that NPAS was acting as an extended business office ("EBO Servicer")—the nature of which is to service a medical account *before* the debt is in default.

The Court denied NPAS's motion to dismiss because, at that stage, it would have been inappropriate to consider the Condition of Admission, especially since Collazo's complaint pled that her account was in default. Although the Court denied NPAS's motion to dismiss, the Court noted that it "s[aw] no need for protracted litigation if NPAS's assertions prove[d] correct," which was "especially true in light of the Court's review of the subject billing statement, which ma[de] no reference to a debt in default or a delinquent account." (Dkt. 24).

The Court limited the parties' discovery for a period of ninety days on the issue of whether NPAS qualified as a debt collector under the relevant statutes in light of the Condition of Admission and "the related issue about whether the debt was in default." The Court permitted NPAS to either file a motion for summary judgment or a request for the Court to lift the stay after the conclusion of the discovery period. *Id.*

The parties conducted discovery pursuant to the Court's Order and NPAS moves for summary judgment.  The facts now follow, which are largely undisputed and interpreted in a light most favorable to Collazo, the non-movant.

## RELEVANT FACTS

On or about February 17, 2018, Collazo received treatment for medical services at Largo Medical Center ("Largo").  As a condition to being treated at Largo, Collazo executed the Conditions of Admission.  With respect to Collazo's financial obligation, the Conditions of Admission stated, in relevant part: "I agree to pay for services that are not covered and covered charges not paid in full by insurance coverage including, but not limited to, coinsurance, deductibles . . ." (Dkt. 46-2).  The Conditions of Admission included a section titled "Third Party Collection" that discussed the involvement of third parties in the servicing of Collazo's account.  Specifically:

6. Third Party Collection. I acknowledge that the Providers may utilize the services of a third party Business Associate or affiliated entity as an extended business office ("EBO Servicer") for medical account billing and servicing. During the time that the medical account is being serviced by the EBO Servicer, *the account shall not be considered delinquent, past due or in default, and shall not be reported to a credit bureau or subject to collection legal proceedings.*  When the EBO Servicer's efforts to obtain payment have been exhausted due to a number of factors (for e.g. Patient or Guarantor's failure to pay or make a payment arrangement after insurance adjustments and payments have been credited, and/or the insurer's denial of claim(s) or benefits is received), *the EBO Servicer will send a final notice letter which will include the date that the medical account may be returned from the EBO Servicer to the Provider.*  Upon return to the Provider by the EBO Servicer, the Provider may place the account back with the EBO Servicer, or, at the option of the Provider, *may determine the account to be delinquent, past due and in default.* Once the medical account is determined to be delinquent it may be subject to late fees, interest as stated, referral to a collection agency for collection as a

delinquent account, credit bureau reporting and enforcement by legal proceedings.

(Dkt. 46-2) (emphasis added).

On February 23, 2018, approximately six days after Collazo's medical treatment, Largo billed Collazo's health insurer for the generated charges of $1,367.33. On March 13, 2018, Largo received a payment from Collazo's health insurer in the amount of $1,112.37. The remaining balance of $254.96 was Collazo's financial responsibility.

On or about April 27, 2018, Largo placed Collazo's account with NPAS. The subject correspondence in this lawsuit involves two billing statements NPAS sent to Collazo. The first statement was dated April 28, 2018. (Dkt. 1-1). It stated in relevant part Collazo's name, her account number, a service date of 02/17/2018 - 02/17/2018, a statement date of 04/28/2018, and a placement date of 04/28/2018. The first statement also included a section labeled "PAYMENT REQUEST" that reflected total payments of $1,112.37, a current balance of $254.96, a "payment due by" of 05/13/18, and an "amount you owe" of $254.96. Under the PAYMENT REQUEST was the following statement:

> The insurance company was billed, leaving an unpaid balance in the amount shown above. Our records indicate that the balance is your responsibility. Please send payment in full at this time. If paying by check or money order, please indicate the account number and make payable to Largo Medical Center. In the event you are unable to pay the balance in full, please contact us at 1-800-223-9899 to discuss options for resolving your account.

*Id.* The second page of the April 28, 2018 statement included a section titled FREQUENTLY ASKED QUESTIONS. One of the questions and answers was: "Q: Who

is NPAS, Inc.?   A: NPAS, Inc. is a company that is *managing your account for the healthcare provider.*"  *Id.* (emphasis added).

NPAS did not receive any response to the April 28, 2018 statement.  On June 11, 2018, NPAS sent the second statement.  (Dkt. 46-6).  This statement also delineated in relevant part Collazo's name, her account number, a service date of 02/17/2018 - 02/17/2018, a statement date of 06/11/2018, and a placement date of 04/28/2018.  The second statement also included a section labeled "ATTENTION REQUIRED" that reflected total payments of $1,112.37, a current balance of $254.96, a "payment due by" of 06/21/18, and an "amount you owe" of $254.96.  Under the ATTENTION REQUIRED section was the following language:

> You are obligated to pay for the services provided and we strongly urge you to take advantage of this FINAL opportunity to settle your balance.  If payment in full is not received, *your account may be referred to a debt collector without further notice.*  If you are unable to pay this account in full, please contact us at 1-800-223-9899 to discuss resolving your account balance. If you have already sent payment in full or contacted us to resolve the balance, thank you.

*Id.* (emphasis added).  The June 11, 2018 statement included the same FREQUENTLY ASKED QUESTIONS on the second page, which explained that NPAS was a "company that is managing your account for the healthcare provider."  *Id.*

Notably, both statements included payment coupons with a payment address to Largo Medical Center.  Both statements reflected the same "Balance Due" of $254.96 on the payment coupon.  *See* (Dkts. 1-1 and 46-6).  Neither of the statements referenced any language regarding Collazo's account being in default or delinquent.  Also, it is undisputed

that neither of the statements identified NPAS as a debt collector; nor did they explain that any information obtained would be used for the purpose of collecting the debt.

On or about July 28, 2018, NPAS returned Collazo's account to Largo.  Largo then placed her account in default and referred her account to a primary collection agency.

On October 11, 2018, Collazo filed this action as a class action under Fed. R. Civ. P. 23.  She alleged that NPAS's correspondence constituted debt collection.  She requested relief under the FDCPA and the FCCPA based on NPAS's purported failures to identify itself as a debt collector and to state that any information obtained would be used for a debt collection purpose.

As stated above, NPAS moves for summary judgment on Collazo's claims.  The sole basis for NPAS's motion is that NPAS was not acting as a debt collector when it sent Collazo the two statements because Collazo's account was not in default during those times.  The parties agree that the FCCPA claims are based solely on NPAS's alleged violations of the FDCPA.  So the Court will limit its analysis to the FDCPA claims, which is also dispositive of the FCCPA claims.

## STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an

otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**DISCUSSION**

This case turns on the FDCPA's definition of "default."  NPAS could not be acting as a debt collector as a matter of law if Collazo's account (i.e., the debt) was not in default when NPAS sent the two billing statements.  If NPAS was not acting as a debt collector, the contents of the two billing statements would not have to contain the disclosures mandated by the FDCPA.  To understand this reasoning, the Court briefly discusses the relevant portions of the FDCPA.

15 U.S.C. §§ 1692e and 1692g regulate the conduct of "debt collectors."  *See* 15 U.S.C. § 1692e (providing that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and reciting the failure to make mini Miranda disclosures in initial communication as a violation); 15 U.S.C. § 1692g (mandating that, within five days after initial communication, "a debt collector shall ... send the consumer a written notice" containing certain information); *see also Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) ("There is no dispute that § 1692e applies only to debt collectors.").

The Eleventh Circuit has noted that "[a] 'debt collector' is a term of art in the FDCPA." *Ausar-El ex rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed.Appx. 1, 2 (11th Cir. Sept. 21, 2011).  There are more than a half dozen exclusions delineated under the statutory definition of "debt collector."  Only one of these exceptions is relevant here—this exception applies to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . .

*concerns a debt which was not in default at the time it was obtained by such person.*" 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).

Under this exception, a defendant would not be obligated to make FDCPA disclosures to a consumer "if the debt being collected was not in default at the time the defendant obtained it." *See Church v. Accretive Health, Inc.*, No. CV 14-0057-WS-B, 2015 WL 7572338, at *8 (S.D. Ala. Nov. 24, 2015), aff'd, 654 Fed. Appx. 990 (11th Cir. 2016) (citing *Davidson*, 797 F.3d at 1314; *Fenello v. Bank of America, NA*, 577 Fed.Appx. 899, 902 (11th Cir. Aug. 12, 2014) ("the district court correctly concluded that Bank of America was not a 'debt collector' for purposes of § 1692g(b) because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer")).

So the critical, dispositive issue in this case is whether Collazo's debt was in default at the time NPAS sent the two billing statements. The Court concludes that the record is undisputed that her debt was not in default during these times. Notably, the term "default" is not defined in the FDCPA. "But a helpful body of precedent developing useful principles for the FDCPA 'default' analysis has emerged, and the Court finds such authorities instructive here." *Church*, 2015 WL 7572338, at *9. The court in *Church* aptly described the relevant case law, which the Court sees no reason to rewrite. Specifically, the court in *Church* stated:

> For example, "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 87 (2nd Cir. 2003) (citation and footnote omitted). Thus, case law rejects the proposition "that default occurs immediately after a debt becomes due." *Id.*; see also *Hamilton v. Avectus Health Care Solutions, LLC*, 2015 WL 5693610,

*8 (N.D. Ala. Sept. 29, 2015) (rejecting notion that "outstanding" and "in default" are synonymous under the FDCPA). Indeed, "[t]he Act's legislative history is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue." *De Dios v. International Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011). Additionally, courts (and the parties in this case) have recognized that "in the absence of a contractual definition or conclusive state or federal law, a creditor's reasonable, written guidelines may be used to determine when an account is 'in default,'" including such factors as "whether the guidelines are applied consistently and whether they are designed for administering accounts, rather than for circumventing the FDCPA." *Prince v. NCO Financial Services, Inc.*, 346 F. Supp.2d 744, 747 (E.D. Penn. 2004) (citation omitted); *see also Bohringer v. Bayview Loan Servicing, LLC*, – F. Supp.3d –, 2015 WL 6561419, *6 (S.D. Fla. Sept. 10, 2015) (creditor's written guidelines may be considered in determining whether debt is "in default" for FDCPA purposes). Ultimately, "the determination of whether a debt is in default [for purposes of the FDCPA] is to be made by a court on a case-by-case basis." *Hamilton*, 2015 WL 5693610, at *8 (citations omitted).

*Id.*

As NPAS points out in its motion, *Church* is persuasive because it involved similar facts. The defendant in *Church*, Accretive Health, Inc., was an early-out vendor. Like NPAS, Accretive Health performed "pre-collection services in an attempt to obtain payment of the unpaid account balance." "Typically, Accretive Health sen[t] multiple billing statements to the patient, and otherwise work[ed] directly with the patient, the insurance company, the hospital and others to try to resolve the balance." If these efforts failed, Accretive Health notified Providence and recommended reclassification of the account from "active" to "bad debt." "If Providence accept[ed] that recommendation, then the unpaid account [wa]s reclassified as "bad debt" on the hospital's financial records and [wa]s considered in default." At that point, Accretive Health's involvement terminated and the "bad debt" was referred to a third-party primary collection agency. *Id.* at *7.

The court concluded that Accretive Health was entitled to summary judgment:

> the summary judgment record weaves a highly persuasive narrative that Accretive Health is not a debt collector for FDCPA purposes because the challenged collection activity (i.e., sending a single letter to Church on January 17, 2014) in this case concerns a debt that was not in default when Accretive Health obtained it. As of that time, Church had never been billed for the debt, Providence had made no attempt to collect it, and the account had been active for just two days. Although the debt was outstanding, it cannot reasonably be viewed on these facts to have been in default.

*Id.* at *10.

The Court similarly concludes, albeit on different facts, that the summary judgment record is overwhelmingly in favor of NPAS.  The record reflects via the Conditions of Admission—which Collazo acknowledged and executed—and through the deposition testimony of Largo's corporate representative that Collazo's account was not in "default" during the time it was being serviced by NPAS, who was an EBO Servicer.  As the Court delineated above, the Conditions of Admission expressly stated that Largo may only determine an account to be "delinquent, past due and in default" *after* the EBO Servicer returned the account and *after* the EBO Servicer sent its final notice letter.  The record reflects that NPAS sent the final notice letter, i.e., the June 11, 2018 billing statement, and then returned the account to Largo on or about July 28, 2018.  It was only after that time that Collazo's account could reasonably be considered in default.

An examination of the two billing statements also reflects that Collazo's account was not considered in default or delinquent at those times.  Indeed, the June 11, 2018 billing statement states explicitly that this was Collazo's "FINAL opportunity to settle" the balance and that if payment in full was not received her account "may be referred to a debt collector

without further notice." (Dkt. 46-6).  The frequently asked questions on the second page of both billing statements also explained that NPAS was a company "managing" the account for Largo.  At most, Collazo's account was "merely outstanding" at that time.  *Alibrandi*, 333 F.3d at 87.  Largo's billing practices also reflect that it did not consider an account to be in default while it was being serviced by the EBO Servicer.  All of this evidence is in the record and is not disputed.

Collazo's attempt to create a genuine issue for trial is unpersuasive.  For example, Collazo relies heavily on a recent case from a district court in Utah, *Young v. NPAS, Incorporated*, 361 F. Supp. 3d 1171 (D. Utah 2019), largely because that case involves the same defendant, NPAS.  The Court has carefully read *Young* and does not find it persuasive, mainly because the facts in *Young* are highly distinguishable.  The communications at issue involved six different accounts.  With respect to the one account that the court concluded related to a debt that was in default, the record reflected that this account had previously been placed in default for approximately 280 days *before* NPAS sent its correspondence.  *Id.* at 1175.  Multiple calls had been placed to the plaintiff about the debt.  Also, the language in the correspondence from NPAS was significantly different from the two billing statements at issue here.  *Id.*

With respect to the other five accounts, the court concluded, without explaining in any detail that "a reasonable jury may find the accounts were in default at the time NPAS attempted to collect them.  A reasonable jury may also, however, reject those findings and rule in favor of NPAS."  *Id.* at 1198.  This is unhelpful.

In stark contrast, the record here is undisputed that Largo did not consider Collazo's debt to be in default at the time Largo sent her account to NPAS for servicing.  The two billing statements do not contain debt collection language.  There is nothing in the correspondence suggesting that her account is delinquent.  No calls were placed to Collazo. And the final notice was sent less than three months from the time Largo received the insurance payment on Collazo's account.  Accordingly, the Court will grant summary judgment in NPAS's favor because the subject debt was not in default at the time NPAS sent the two billing statements.[1]

It is therefore **ORDERED AND ADJUDGED** that:

1.     Defendant NPAS, Inc.'s Motion for Summary Judgment (Dkt. 46) is granted.

2.     The Clerk of Court is directed to enter Final Judgment in favor of Defendant and against Plaintiff.

3.     The Clerk of Court is further directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on June 14, 2019.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

---

[1]The Court rejects Collazo's belated attempt to assert the "false name exception" to creditor immunity.  If she believes in good faith that she has such a claim against Largo, who is not a party to this lawsuit, she may file a new action.